JOHN D. SCHAPIRO AND ELEANOR T. SCHAPIRO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schapiro v. Commissioner
Docket No. 29699-88
United States Tax Court
T.C. Memo 1991-128; 1991 Tax Ct. Memo LEXIS 147; 61 T.C.M. (CCH) 2215; T.C.M. (RIA) 91128; March 21, 1991, Filed *147 Decision will be entered under Rule 155. Held: The values of conservation easements on Maryland lands granted to the Maryland Environmental Trust in 1981 and 1984 determined. Marc P. Blum and Jefrey S. Weingrow, for the petitioners. Clare J. Brooks, for the respondent. WHITAKER, Judge. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION By statutory notice dated August 17, 1988, respondent determined deficiencies in petitioners' Federal income tax, additions to tax, and increased interest for the years and in the amounts as follows: Tax Year
Section
Section
Ended
Deficiency
6659 [1]
6621(c)
12/31/82
$ 73,677
--  $ 73,677
12/31/83
14,603
--  14,603
12/31/84
64,345
$ 19,303
64,345
The issues for decision are the values of two deeds of easement granted *148 by petitioners to Maryland Environmental Trust (the Trust). We adopt the values determined by petitioners' expert. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulations and attached exhibits are incorporated herein by this reference. Petitioners are husband and wife and resided in Monkton, Maryland, at the time they filed their petition in this case. Since December 1967 through the time of trial, petitioners have been the owners in fee simple as tenants by the entirety of land referred to as Tally Ho Farm consisting of two tracts of land, one containing approximately 165 acres and the other approximately 30 acres. [2]
The Maryland Environmental Trust was created by the General Assembly pursuant to Subtitle 2 of Title 3 of the Natural Resources Article of the Annotated Code of Maryland (1983 Repl. Vol.) *149 in 1967 to conserve, improve, and perpetuate the State's natural environment. The Trust was and is a charitable organization described in section 170(c)(2). The Trust is governed by a 15-member Board of Trustees, 12 of whom are citizens and the remaining 3 are ex officio members -- the Governor, the President of the Senate, and the Speaker of the House or their designees. The Trust is an autonomous administrative unit in the Maryland Department of Natural Resources. The conservation easement program is the Trust's most active program. The Trust arranges the donation of conservation easements to it to insure the protection of open areas such as farm and forest lands, wildlife habitat, historic sites, and properties with scenic features. The conservation easement program is designed to prevent the development of important open areas. As of 1987, the Trust has received voluntary easements on more than 25,000 acres in Maryland, including over 60 miles of shoreline on the Chesapeake Bay and its tributaries. This conservation easement program has been since 1972 the most active program of the Trust. Owners of Maryland lands who donate conservation easements to the Trust retain all *150 rights of ownership except the right to develop the property. Since 1972, more than 130 property owners across the State have donated such easements. Conservation easements do not impede the sale or inheritance of property although the conservation easement passes with the property to the new owner. However, a conservation easement does prevent an owner from developing the land at any time. By deed of easement dated December 23, 1981, petitioners granted to the Trust a conservation easement on the 165-acre tract. By deed of easement dated December 11, 1984, petitioners granted the Trust a conservation easement on the 30-acre tract. The two easement gifts meet all the requirements of section 170 and the regulations pertaining thereto so as to be valid deductible charitable contributions. While the language of the two deeds is not exactly the same, for all practical purposes they are identical. They granted to the Trust the right in perpetuity to restrict the use, development, and subdivision of the lands described in the two easement gifts. The easement gifts are legally valid in accordance with the terms thereof and are binding on petitioners and their heirs, successors, *151 and assigns. Petitioners received no consideration from the Trust for either of the easements. The two tracts of land are located in the northeastern part of Baltimore County, Maryland, and in the northwestern part of Harford County, Maryland, in an area generally known as "My Lady's Manor." Tally Ho Farm is located in the Hess Road area of My Lady's Manor. The entire My Lady's Manor district was placed on the National Register of Historic Places on April 15, 1978. The general area surrounding the two tracts is agricultural with a mix of "working farms" and "gentlemen farms." Hess Road is a paved, public street maintained by the Maryland Department of Highways and Transportation with the farm lying on both the north and south sides of the road. The farm is approximately 45 minutes from downtown Baltimore. Neither of the easements affected the value of the improvements on Tally Ho Farm. The 165-acre tract is zoned RC2. In Baltimore County where the 165-acre tract is located, land which is zoned RC2 allows for two residential building lots with a minimum lot size of one acre to be placed on each parcel. The 165-acre tract is comprised of three adjacent parcels of land. At the *152 time of the two gifts, petitioners had an unqualified legal right to subdivide the land constituting the respective easement gifts. Under the Baltimore County zoning regulations in effect at the relevant times, six residential building lots would have been permitted. The 1981 deed of easement reserved in petitioners the right to add one additional house, but the house would be restricted to "one residence necessary for agricultural uses." This reservation did not add value to the property subject to the easement. By letter dated March 1, 1988, to petitioners' counsel, the Trust stated that only a tenant house can be located on the 165-acre tract in addition to petitioners' own residence. Petitioners obtained an appraisal dated March 5, 1982, from Melville H. Peters of Associated Appraisers, Beltsville, Maryland, which placed the fair market value of the 1981 easement at $ 344,250. Petitioners carried forward the charitable deduction representing the 1981 easement from their 1981 calendar year to their 1982 and 1983 calendar years. An appraisal from the same individual fixed the value of the 1984 easement at $ 160,350. (Mr. Peters did not testify due to his health.) To the extent *153 that the second charitable contribution is not used up in 1984, the balance would be carried over to petitioners' 1985 Federal income tax return. Although the statutory notice determined a valuation overstatement under section 6659, the parties have stipulated that the two gifts were not valuation overstatements as defined by that Code section. The parties have further stipulated that petitioners did not make a substantial underpayment as defined by section 6621(c) with respect to these two gifts and further stipulated that the two transactions were not tax-motivated transactions as defined by section 6621(c). At the trial, petitioners and respondent both used expert witnesses, viz., Mr. Richard A. Moore and Mr. Walter A. Reiter, Jr., both of whom are qualified experts in the area of valuation of conservation easements and qualified experts on the value of properties in Baltimore County. Mr. Moore is an experienced developer and broker of land in the vicinity of subject property whereas Mr. Reiter is a senior member of the American Society of Appraisers, a member of the Baltimore and Howard Counties Appraisers' Society, and a member of the Maryland bar. He has been a real estate *154 appraiser since 1967 and has been in the real estate business since 1958. Mr. Moore determined that the highest and best use of the 165-acre tract is for residential building lots and that it could be subdivided into six building lots. He determined that the highest and best use of the 30-acre tract was also for residential building lots and that it could be subdivided into four building lots. Mr. Moore placed a value of $ 375,000 as of November 10, 1981, on the conservation easement on the 165-acre parcel and a value on the conservation easement pertaining to the 30-acre parcel of $ 220,031 as of December 11, 1984. Mr. Reiter valued the two tracts as single parcels. He placed a value on the easement on the 165-acre parcel at $ 281,000 and a value on the easement on the 30-acre parcel at $ 107,000. Thus, the valuations of the two appraisers on the easement across the larger parcel are $ 94,000 apart and on the 30-acre parcel slightly more than $ 113,000 apart. Both appraisers concluded that no further subdivision or development of additional sites was possible with respect to the land subject to these easements. Thus, as a result of the easements, these two parcels are restricted *155 to agricultural uses. This property is served by rural two-lane county roads but it is also readily accessible to Interstate 83 which lies west of the property. While there has been relatively little subdivision development in My Lady's Manor, there is some evidence of subdivision development. There is a substantial amount of riding and hunting on this property by the local landowners which activities would be seriously interfered with by subdivision development. OPINION The only issues before this Court in this case are the values of the two conservation easements granted respectively in 1981 and 1984. These two easements meet all of the requirements for qualified conservation contributions pursuant to section 170(h). See and compare Higgins v. Commissioner, T.C. Memo 1990-103. There are actually four different values before the Court: The deductions claimed by petitioners on their 1981 and 1984 tax returns, the deductions allowed by respondent in the notice of deficiency, and the valuations by each of the expert witnesses who testified in the case. These are shown on the following table taken from the stipulation: Schapiro
Notice of
Reiter
Moore
Deduction
Deficiency
Valuation
Valuation
1981
$ 344,250
$ 165,500
$ 281,000
$ 375,000
1984
160,350
30,000
107,000
220,031
Total
$ 504,600
$ 195,500
$ 388,000
$ 595,031
*156 Deductions for charitable contributions of property are based upon the fair market value of the property at the time of the contribution. Sec. 1.170A-1(c)(1), Income Tax Regs. Fair market value is defined in the regulations as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax Regs.; see also Fannon v. Commissioner, T.C. Memo 1989-136. Fair market value is a question of fact which must be determined after consideration of all the relevant factors. Hamm v. Commissioner, 325 F.2d 934, 938 (8th Cir. 1963), affg. a Memorandum Opinion of this Court. The fair market value of an easement must be based on the highest and best use of the property on the valuation date. Stanley Works v. Commissioner, 87 T.C. 389, 400 (1986); see also sec. 1.170A-14(h)(3)(ii), Income Tax Regs. The realistic and objective potential uses for the property control and it is immaterial whether the owner puts the property to its highest and best use. Stanley Works v. Commissioner, supra at 400. *157 Where there are no comparable sales of easements to be used to determine value, it is considered appropriate to value an easement by a "before and after" analysis, comparing the value of the property before the grant to the value of the property after the grant. Sec. 1.170A-14(h)(3)(ii), Income Tax Regs.; see also Fannon v. Commissioner, supra.
In this case each side presented written reports by that party's appraiser and both appraisers testified. The principal difference between the approaches of the two appraisers, resulting in the significantly different valuations, is that Mr. Richard A. Moore, who testified for petitioners, treated the 165-acre parcel as having been subdivided into six residential building lots and the 30-acre parcel as having been subdivided into four residential building lots. Mr. Reiter, who valued the property for respondent, treated each parcel as a single parcel containing its appropriate acreage. Thus the comparables used by Mr. Reiter were sales of one parcel of 82 acres, one parcel of 147 acres, one parcel of 95 acres, one parcel of 115 acres, one parcel of 88 acres, and one parcel of 75 acres. Mr. Moore, on the other hand, *158 used as comparables sales of parcels varying from 24 acres up to 55 acres, after having determined that it would be appropriate to subdivide the larger tract into six lots varying in size from 7.10 acres to 45.8 acres. He assumed the 30-acre parcel could be subdivided into four lots ranging in size from 4.1 to 15.1 acres. The comparables for the 30-acre parcel varied in size from 3.12 acres to 13 acres. Another factor emphasized by Mr. Moore was that the development costs would be fairly nominal since Mr. Schapiro could have handled the subdivision and sale of the property with very little cost other than for an engineer and surveyor and probably a real estate agent to handle the sales. It is obvious, but the record in this case also contains testimony that it is far easier to find buyers for lots with smaller acreage than the two parcels involved here. We think under the circumstances of this case that Mr. Moore's approach is the sounder of the two. It is undisputed that the effect of granting the easement was to preclude subdivision of this property. We are convinced that Tally Ho Farm could have easily been subdivided with a minimum of expense. The sale of the 10 lots would *159 realize substantially more money than sale of the two tracts containing approximately 190 acres and could probably have been effected in a much shorter time frame. Accordingly, we agree with and adopt Mr. Moore's valuation and find that the value of the conservation easement granted in 1981 is $ 375,000 and the value of the 1984 easement is $ 220,031. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The property description contained in the deed of easement pertaining to the 165.37-acre tract appears to total 163.77 acres but this discrepancy is immaterial.↩